# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **KING FRED PROPERTY MANAGEMENT & CONSTRUCTION, LLP,** } } } } | |
| Plaintiff, } } | Case No.: 2:20-cv-01270-MHH |
| v. } } | |
| **THE CITY OF BIRMINGHAM, ALABAMA,** } | |
| Defendant. | |

## MEMORANDUM OPINION

On January 11, 2023, a jury returned a verdict of $73,000 in favor of King Fred Property Management & Construction LLP. (Doc. 65). King Fred seeks an additional award of prejudgment interest on the jury's verdict, (Doc. 69), and attorneys' fees, (Doc. 70). For the reasons stated in this order, the Court grants King Fred's motions.

### *Prejudgment Interest*

The parties agree that the prejudgment interest, in this case, began to accrue on September 9, 2019, the date the City demolished King Fred's property. (Doc. 69, p. 3; Doc. 71, p. 3). The parties do not agree on the applicable interest rate.

1

When, as here, a controlling federal statute is silent as to the manner of computing prejudgment interest, a district court may exercise its discretion in selecting the rate at which to calculate prejudgment interest. *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 710 (11th Cir. 2005) (citing *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1447 (11th Cir. 1998)). "That decision is 'usually guided by principles of reasonableness and fairness, by relevant state law, and by the relevant fifty-two week United States Treasury bond rate, which is the rate that federal courts must use in awarding post-judgment interest.'" *In re Int'l Admin. Servs., Inc.*, 408 F.3d at 710 (quoting *Indus. Risk Insurers*, 141 F.3d at 1447) (citing 28 U.S.C. § 1961 (2012)). Here, the parties agree that the Court should look to state law to determine the appropriate prejudgment interest rate. (Doc. 69. pp. 2–3; Doc. 71, p. 2).

King Fred argues that ALA. CODE § 8-8-1 governs, and the correct prejudgment interest rate under that statute is 6% per annum. (Doc. 69, pp. 2–3). The City argues that the Court should apply ALA. CODE § 18-1A-211 which sets the post-judgment interest rate on eminent domain awards "at a rate equal to the most recent weekly average one-year constant maturity yield, as published by the Board of Governors of the Federal Reserve System, upon the unpaid portion of the compensation awarded." (Doc. 71, pp. 2–3).

Before 1995, ALA. CODE § 18-1A-211 set the prejudgment interest rate for eminent domain and condemnation cases at 12%. *Williams v. Alabama Power Co.*, 730 So. 2d 172, 173 (Ala. 1999), *overruled on other grounds by Ex parte Marble City Plaza, Inc.*, 989 So. 2d 1065 (Ala. 2007). When § 18-1A-211 was amended in 1995, the statute's new language did not prescribe a prejudgment interest rate. Commenting on the amended version of § 18-1A-211, the Alabama Supreme Court stated:

> Alabama is once again without a statute setting the rate of prejudgment interest in a delayed-payment condemnation action. The absence of such a statute places a heavy burden on trial courts to determine the proper rate of interest. It can also lead to inconsistent results. In fashioning a new prejudgment-interest statute, the Legislature should take into account the fundamental requirement that a landowner be awarded just compensation for property taken by eminent domain.

*Williams*, 730 So. 2d at 178; *Ex parte Marble City Plaza, Inc.*, 989 So. 2d at 1073 ("As we did in *Williams*, we ask the legislature to draft a statute addressing prejudgment interest in order to prevent inconsistent results regarding the calculation of prejudgment interest . . . . In the event that the legislature does not act, . . . we are left with the language in *Williams* that '[b]ecause of the nature of prejudgment interest as a part of just compensation in a delayed-payment condemnation action, the rate of interest should loosely reflect the rate of return that would have been available to the landowner while this action was pending had

3

the landowner received the value of his or her land at the time of the taking.'") (citation omitted).

Given the Alabama Supreme Court's opinions in *Williams* and *Ex parte Marble City Plaza, Inc.*, the Court is not persuaded that it should use § 18-1A-211's post-judgment interest rate provision to determine the appropriate prejudgment interest rate in this case. Had the Alabama Supreme Court intended for courts to apply § 18-1A-211 to prejudgment interest awards, it would have said so. The Legislature's silence suggests that lawmakers intended courts to revert to § 8-8-1, Alabama's general provision regarding prejudgment interest.[1]

The City argues that ALA. CODE § 8-8-1 "does not apply to real estate or governmental takings cases." (Doc. 71, p. 2). The City does not cite a case supporting its position, and the Court has not located one. Importantly, the City does not argue that the 6% interest rate proposed by King Fred is unfair or unreasonable or would not provide just compensation. The 6% rate is significantly more favorable to the City than the 12% prejudgment interest rate that applied under the former version of § 18-1A-211. Absent a specific statute setting the prejudgment interest rate in condemnation cases, the Court will apply the 6%

---

[1] In *Williams*, Justice Cook, concurring with the majority opinion, wrote that he was not persuaded that the Alabama legislature left parties without a statutorily prescribed prejudgment interest rate. *Williams*, 730 So. 2d at 178. Justice Cook instead submitted that he "would have the parties address whether § 8–8–1 applies here in the absence of a specific statute setting a rate of prejudgment interest." *Williams*, 730 So. 2d at 178.

prejudgment interest rate set out in ALA. CODE § 8–8–1.[2]  At an annual rate of 6% from September 9, 2019, to February 9, 2023, when this order is entered, the prejudgment interest rate on the jury's award of $73,000 is $14,965.

### *Attorneys' Fees and Costs*

In actions under 42 U.S.C. § 1983, a district court, "in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."  42 U.S.C. § 1988.  King Fred requests $97,271.11 in attorneys' fees and $462.36 in costs.  (Doc. 70, p. 11).  The City does not challenge King Fred's ability to recover attorney's fees but objects to the reasonableness of the requested fees.  The City asks the Court to "reduce the fees so as to be justiciable in the current case."  (Doc. 72, pp. 1–2).

---

[2] *Davidson v. Worldtex, Inc.*, 2011 WL 13232560, at *2 (N.D. Ala. Jan. 6, 2011), *report and recommendation adopted*, 2011 WL 13233500 (N.D. Ala. Mar. 31, 2011) ("It may be arguable that in a given case, circumstances might exist that would make it equitable to employ a formula other than that used under Alabama law, such as looking to the method used to compute post-judgment interest under 28 U.S.C. § 1961. Use of such an alternate method would likely also be within this court's discretion . . . . However, given that PNF has submitted no materials in opposition to the plaintiffs' motions for entry of final judgment, it is not clear that the plaintiffs' suggested method of calculation based on the 6% rate specified by Alabama law is unfair or unreasonable under the circumstances. It is thus appropriate to calculate the award of pre-judgment interest to the plaintiffs based upon the 6% annual rate of Ala. Code § 8-8-1.") (internal citations omitted); *Berkshire Hathaway Homestate Ins. Co. v. Adams*, 2019 WL 3418594, at *2 (M.D. Ala. July 29, 2019); *Burgess Min. & Const. Corp. v. Lees*, 440 So. 2d 321, 338 (Ala. 1983) ("[T]he Court holds that where, as in this case, no written contract controls the interest rate, thereby precluding the 8% rate of 8–8–1, the legal rate of prejudgment interest is 6% per annum.").

"The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (internal marks and citation omitted). "The product of these two figures is the lodestar and there is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." *Bivins*, 548 F.3d at 1350 (citation omitted).

In calculating an attorney's hourly rate, "'[a] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation,' and the party seeking attorneys' fees bears the burden of producing 'satisfactory evidence' the rate sought meets that standard." *Hithon v. Tyson Foods, Inc.*, 151 F. Supp. 3d 1252, 1258 (N.D. Ala. 2015) (quoting *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)). "Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299 (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)) ("[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."). "[I]n line with the goal of obtaining objectivity, satisfactory evidence necessarily must speak to rates actually

billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate . . . ." *Norman*, 836 F.2d at 1299.

As evidence of the reasonableness of its attorneys' hourly rates, King Fred submits the affidavits of its two lawyers who state that their respective rates of $350 and $385 per hour are reasonable because, based on their experience, the rates are "in line with applicable legal authority and other comparable attorneys practicing in the surrounding area." (Doc. 70-2, p. 4; Doc. 70-3, p. 4). King Fred has not presented evidence of rates actually billed and paid in similar lawsuits from which the Court can determine a reasonable hourly rate based on the experience and skill of the lawyers. *Norman*, 836 F.2d at 1301 ("[T]he best information available to the court is usually a range of fees set by the market place, with the variants best explained by reference to an attorney's demonstrated skill.").

Nevertheless, "'[t]he court itself is an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to the reasonable[ness] of the fee request.'" *Mouzin Bros. Farms, LLC v. Dowdy*, 2023 WL 123209, at *3 (M.D. Ga. Jan. 6, 2023) (quoting *Dependable Component Supply, Inc. v, Carrefour Informatique Tremblant, Inc*. 572 Fed. Appx. 796, 802 (11th Cir. 2014)). Attorneys Cindy S. Webb, who requests fees at an hourly rate of $350, and Richard A. Bearden, who requests fees at an hourly rate of

7

$385, have been practicing law for 20 and 27 years, respectively. (Doc. 70-2, p. 5; Doc. 70-3, p. 5). The relevant legal community from which to extrapolate a reasonable hourly rate is presumed to be where the case was filed. In the Northern District of Alabama, in 2018, Judge Bowdre found that $375 per hour was reasonable for an attorney with 19 years of experience in complex civil litigation, and $350 per hour was reasonable for an attorney with 13 years of experience in complex civil litigation. *Simrell v. Teva Pharmaceutica USA, Inc.*, 2018 WL 10509889, at *1 (N.D. Ala. Nov. 6, 2018).[3] The Court finds that the hourly rates proposed by King Fred for Ms. Webb's and Mr. Bearden's services are reasonable. Additionally, the $150 per hour for the work done by paralegal Mycalee Stults, who has over 22 years of experience, is also reasonable in the Northern District of Alabama.[4]

Having determined the hourly rate for the attorneys and the paralegal in the case, the Court now turns to the number of hours expended on the litigation. King

---

[3] *See also Parker v. Healthcare Inv. Grp., Inc.*, 272 F. Supp. 3d 1303, 1312 (N.D. Ala. 2017) ("[T]he Court finds that $375.00 is a reasonable hourly rate for all counsel of record . . . as it is in accordance with the prevailing Decatur/Huntsville or Northeastern Division range of rates (that in the undersigned's experience is typically somewhat lower than Birmingham or Southern Division rates, regardless of the practice area) for similar services by lawyers of reasonably comparable skills, experience, and reputation. In particular, all these lawyers have over 10 years in experience and are very close to each other in terms of their total years spent in practice (*i.e.*, ranging from 18 to 23 years).").

[4] *Virciglio v. Work Train Staffing LLC*, 2018 WL 11424658, at *3 (N.D. Ala. Aug. 14, 2018) ("Contrary to Petrusnik's contention, the Plaintiff has offered numerous affidavits from third party lawyers establishing that, in 2014, the top end hourly rate for skilled paralegal assistance in Birmingham was $150 . . . . Recent decisions in this District support that observation.") (internal citations omitted) (collecting cases).

Fred seeks compensation for 271.50 total hours. (Doc. 70, p. 3). The City argues that King Fred's proposed time is "somewhat 'padded' and should be reduced." (Doc. 72, p. 3). According to the City, "the types of line items that should be struck and/or reduced by this Court include: redundant billing on tasks where it is unnecessary or redundant for multiple attorneys; phone calls, meetings, and emails between Plaintiff's attorneys; administrative tasks; and travel time." (Doc. 72, p. 3).

To determine the reasonableness of the hours spent on the case, the Court must make an hour-by-hour analysis of the hours submitted by King Fred. *Bivins*, 548 F.3d at 1351 (stating that to reach the lodestar amount, a court has discretion to do an hour-by-hour analysis or an across-the-board reduction of the requested compensable hours, but not both). "In making adjustments to hours claimed, the district court is charged with deducting for redundant hours. Redundant hours generally occur where more than one attorney represents a client. There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman*, 836 F.2d at 1301–02. Considering the duration of this litigation and the nature of the case, any duplicative hours are not excessive or unreasonable. Likewise, the time billed for travel to and from court is reasonable and can be recovered. (Doc. 70-1, p. 3); *Yule*

*v. Jones*, 766 F. Supp. 2d 1333, 1344 (N.D. Ga. 2010) ("The Eleventh Circuit and district courts in this Circuit uniformly have allowed recovery of such expenses as photocopying, postage, long distance phone calls, necessary travel, and on-line research.").

Lastly, "with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988." *Hithon v. Tyson Foods, Inc.*, 566 Fed. Appx. 827, 830 (11th Cir. 2014) (internal quotations and citation omitted).  The City does not object to Kind Fred's expenses and the Court likewise finds that King Fred's expenses in the amount of $462.36 are reasonable and recoverable in light of the affidavits submitted by Ms. Webb and Mr. Bearden.

Having determined the reasonable hourly rate of King Fred's attorneys and the reasonable amount of hours spent on this case, the lodestar amount King Fred is entitled to recover in attorneys' fees and costs is $97, 271.11.

For the reasons discussed above, the Court grants King Fred's motions for prejudgment interest, (Doc. 69), and attorney's fees, (Doc. 70).

**DONE** and **ORDERED** this February 9, 2023.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE